ANTHONY A. FINK ET AL., APPELLANTS, V. O'NEILL COUNTRY
CLUB, APPELLEE.

352 N.W.2d 166

Filed July 20, 1984.    No. 83-782.

John C. Schraufnagel of Cronin, Symonds & Schraufnagel, for appellants.

No appearance for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The plaintiffs appeal from an order entered by the district court dismissing this action at the close of the plaintiffs' case. The assignments of error allege that the action of the trial court was contrary to the evidence and contrary to law. This is an equity action and is reviewed de novo on the record.

The plaintiffs own residences located immediately north of Hynes Street in O'Neill, Nebraska. The defendant operates a golf country club immediately south of this same street. There is a concrete drainageway which runs north and south between the residences of the plaintiffs, and which carries surface runoff

water through a culvert, under the street, and onto the property of the defendant. In the summer of 1982 the defendant built an earthen structure, or berm, to try to prevent the claimed increased runoff waters from flooding its golf course. As a result, the plaintiffs allege that this caused the water to back up and flood their properties. This action was brought seeking a mandatory injunction to require the defendant to remove the earthen structure.

The evidence would tend to establish that there was a natural drainage course which carried surface water runoff from the north to the south, generally in the area where the concrete drainageway is now located. Before 1981, the drainageway was not lined with concrete and only a single 27- by 42-inch corrugated pipe culvert drained the water under Hynes Street and onto the property of the defendant.

Prior to 1981, according to the testimony of Douglas Trowbridge, a former employee of the defendant, there was no problem with standing water on the golf course. However, in 1981 the concrete drainageway was constructed and the single corrugated pipe culvert was replaced with three 30-inch concrete arch pipes. After that, according to Trowbridge, water might remain on the fairways, following a rain, for as long as 2 to 3 weeks. In an effort to correct this situation, the earthen structure was built.

There appears to be no contradiction of the testimony of one of the plaintiffs, Anthony Fink, that before the earthen structure was installed, rainwater would back up on the plaintiffs' property and remain for no longer than half a day. However, following that time, the waters would pond up as deep as 15 inches or more and remain for as long as a week.

The testimony of Thomas Schaub, a certified land surveyor, revealed that in 1967, the date on which an aerial photograph map was made showing the natural drainage in this area, there were no houses and, of course, no lawn irrigation systems and no center pivot irrigation units. All of these items have been added to the area, together with the concrete drainageway and three drain pipes. Schaub also said that the change from a single pipe culvert to the three-pipe installation would increase the volume of water discharged onto the defendant's land in pro-

portion to the increase in square footage of the culvert system of from 7.07 square feet to 15 square feet.

We believe that the foregoing facts and conclusions drawn from them are amply supported by the record. It remains for us to apply the applicable law to those facts.

In concluding to deny the relief sought by the plaintiffs, the trial court reasoned that the burden imposed on the defendant to take waters draining from the plaintiffs' property was the "impoundment of water that would be carried by a 24-inch tube" (actually a 27- by 42-inch tube); the installation of the three 30-inch tubes caused a substantial increase in the burden cast upon the defendant; and the "country club . . . has some right to protect themselves against the excess burden, and . . . this plaintiff has failed to show that the country club exceeded its right to protect itself . . . ."

However, the law in this state does not permit such a conclusion. In *Barry v. Wittmersehouse*, 212 Neb. 909, 327 N.W.2d 33 (1982), this court said the flow of surface water may be increased and diverted upon the land of another, if it is done through an existing natural watercourse and is done in a careful manner without negligence.

In a similar vein, in *Nickman v. Kirschner*, 202 Neb. 78, 273 N.W.2d 675 (1979), we declared that water velocities which increase as a result of proper maintenance or construction of drainage tubes or ditches, done without negligence, are also a burden which must be accepted by the servient estate.

Finally, we have stated without equivocation that surface waters resulting from rainfall or melted snow which collect and flow into a natural drainage channel or depression may not be dammed, diverted, or otherwise repelled by the owner of the land upon which they flow. *Schmidt v. Chimney Rock Irrigation Dist.*, 209 Neb. 1, 305 N.W.2d 888 (1981).

In other words, it is the continuing duty of a lower landowner who builds a structure across a natural drainageway to provide for the natural passage through such obstruction of all the water which may be reasonably anticipated to drain therein. *Nichol v. Yocum*, 173 Neb. 298, 113 N.W.2d 195 (1962).

The record demonstrates that the defendant repelled and diverted water flowing in a natural drainageway onto the lands of

the plaintiffs, to their damage. The plaintiffs had sustained their burden of proof in making out a prima facie case, and the district court was in error in dismissing the plaintiffs' case at the stage of the proceedings that it did.

The general rule in an equity case where a motion to dismiss at the close of plaintiff's case is erroneously sustained requires that the cause be remanded to the trial court for a new trial. *Botsch v. Leigh Land Co.*, 205 Neb. 401, 288 N.W.2d 31 (1980). Accordingly, the judgment of the district court is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.