# IN THE COURT OF APPEALS OF IOWA

No. 23-0958
Filed May 22, 2024

MARABELLE ANN 'LE' ABBAS, MARABELLE ABBAS TRUST, MATTHEW ABBAS, HARLAND DUANE ABBAS TRUST, PATRICIA F. HANSON, PATRICIA HANSON, TEN-K FARMS, INC, BRUCE C. REID, LYNETTE MEYER and ROY AND NEVA STOVER TRUST,
    Plaintiffs-Appellants/Cross-Appellees,

vs.

FRANKLIN COUNTY BOARD OF SUPERVISORS, MIKE NOLTE, GARY MCVICKER, and CHRIS VANNESS AS TRUSTEES OF DRAINAGE DISTRICT NUMBER 48,
    Defendants-Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Franklin County, Rustin Davenport, Judge.

Plaintiffs appeal and defendants cross-appeal the award of damages to plaintiffs following repairs to a drainage ditch. **APPEAL AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS; CROSS-APPEAL AFFIRMED.**

Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellants/cross-appellees.

George A. Cady III of Cady & Rosenberg Law Firm, P.L.C., Hampton, for appellees/cross-appellants.

Heard by Tabor, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Members of the Abbas family and related trusts; the Hanson family and a related company; and Bruce Reid and Lynette Meyer and the Roy and Neva Stover Trust ("plaintiffs") appeal, and the Franklin County Board of Supervisors and drainage district trustees ("defendants") cross-appeal, from a district court ruling finding the defendants had an easement on the plaintiffs' land and awarding the plaintiffs damages. The case concerns Franklin County Drainage District 48 (DD48)[1] and repairs made to a drainage ditch, which impeded the plaintiffs' farming practices and decreased the value of their land. Reid, Meyer and the Stover Trust ("Reid-Meyer") also appeal a post-trial ruling requiring they convey certain property to the defendants. On our review, we affirm the easement ruling, affirm the appeal and cross-appeal on damages, and vacate and remand with directions on the property-conveyance question.

## I. Background Facts and Proceedings

The Franklin County Board of Supervisors established Drainage District No 1 (DD1) in 1906. The district first constructed an open ditch that was four feet wide at bottom, with a slope and varying width at the top. Ten years later, the Board appointed an engineer who concluded DD1 required further construction. DD1 was renumbered DD48 and tile was installed along the main ditch with backfill

---

[1] "A drainage district is an area of land, set out by legal proceedings, which is subject to assessment for drainage improvements within the area." *Fisher v. Dallas County*, 369 N.W.2d 426, 428 (Iowa 1985); *see also State ex rel. Iowa Emp. Sec. Comm'n v. Des Moines County*, 149 N.W.2d 288, 291 (Iowa 1967*)* (noting drainage districts are political subdivisions of the counties they reside in). A drainage district's "affairs are managed by the county board of supervisors in a representative capacity." *Fisher*, 369 N.W.2d at 428. And a drainage district may also be managed by "a board of trustees" once its construction is complete. *Id.*

to a grade. This construction, completed the following year, resulted in a surface waterway above the tile line.

Between 1917 and the late 1930s, the surface waterway was partially filled in. But more repairs were eventually needed. As relevant to this appeal, another attempt at repairs was made in 1990 but failed—once again, the cropland did not drain properly. Various factors contributed to drainage problems, including the age of the tile and areas of breakage in the tile line. In 2017, DD48 gave up on the tile line and created an open-ditch project similar to what was originally constructed in 1906. But the new drainage ditch was not crossable by farm equipment and it severed or otherwise negatively affected tracts of land owned by these plaintiffs.

Pursuant to Iowa Code section 468.24 (2019), the Board appointed three appraisers (one engineer and two disinterested landowners) to assess the plaintiffs' damages. In a report presented to and approved by the Board, the appraisers found damages as follows for takings:

- For the Abbas property, a taking of 1.8 acres and damages of $13,846.64.

- For the Hanson property, a taking of 1.46 acres and damages of $13,072.79.

- For Reid-Meyer, a taking of 1.32 acres and damages of $11,302.30.

The appraisers did not award damages for severance of the Abbas and Hanson properties but found Reid-Meyer was owed additional damages of $36,915.26 for 4.01 acres now rendered inaccessible.

The plaintiffs were not satisfied with the appraisers' assessment of damages and appealed to the district court. *See* Iowa Code § 468.83(1). The court found DD1 had been renumbered DD48 and there was a continuation of the

drainage ditch from 1906. The court also concluded the drainage ditch was not abandoned even though there was dirt over the tile line, the area was used for crops, and landowners were taxed for the property they were using. The court also heard, but did not fully credit, the testimony of two expert witnesses hired by the plaintiffs.

The court found the plaintiffs were entitled to damages for taking and severance. The court did not wholesale adopt proposed amounts from any party, but instead made credibility determinations to assign weight to certain evidence and calculated damages based on the loss of value to the property following the changes to the ditch. The court found damages to the Abbases in the amount of $91,189; the Hansons $162,003, and Reid-Meyer $41,541.80. The court also separately assessed Reid-Meyer's inaccessible property and awarded severance damages of $36,915.26, for a total damages award to Reid-Meyer in the amount of $78,457.06. In short, the district court awarded the plaintiffs more than the appraisers but did not award the full amount any plaintiff requested.

The defendants filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), claiming the court had used an improper method to assess damages. And the defendants requested the court convey the inaccessible Reid-Meyer parcel to DD48 by warranty deed upon payment of the ordered amount. The plaintiffs resisted the defendants' motion and filed their own rule 1.904(2) motion, urging the award of damages was too low. The defendants resisted. The court denied nearly all of the parties' requests but ordered Reid-Meyer to convey the inaccessible parcel to DD48. The plaintiffs appeal and the defendants cross-appeal.

## II.     Standard of Review

"Appeals from orders or actions of the board fixing the amount of compensation for lands taken for right-of-way or the amount of damages to which any claimant is entitled shall be tried as ordinary proceedings.  All other appeals shall be triable in equity."  Iowa Code § 468.91.  This case involves the amount of damages and was therefore a trial at law.  *See id.*; *accord Chi. Cent. & Pac. R.R. Co. v. Calhoun Cnty. Bd. of Supervisors*, 816 N.W.2d 367, 370 (Iowa 2012) (noting disputes concerning the amount of damages are tried at law).  As such, we review for the correction of errors at law.  Iowa R. App. P. 6.907.  "Findings of fact in a law action, which means generally any action triable by ordinary proceedings, are binding upon the appellate court if supported by substantial evidence."  Iowa R. App. P. 6.904(3)(a).

## III.     Discussion[2]

This combined appeal and cross-appeal raise three issues: (1) the existence of an easement, (2) damages, and (3) the conveyance of property.  Since it impacts our subsequent analysis, we address the easement issue first.

## A. Easement

The plaintiffs contend the district court erred by finding DD48 had an easement for a ditch right of way, which reduced their damages under the court's

---

[2] Both parties' briefs seem to be printed and scanned images of text, rather than text exported directly to .PDF from a word processing program.  The text is off-kilter and at times difficult to read.  The briefs are also not searchable, as required by our rules.  Iowa R. App. P. 6.903(1)(d) (previously rule 6.903(1)(c)).  "We do not mention the transgressions out of a fit of crankiness," but "[r]ule infractions are not a trivial matter."  *State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013).  Infractions impede our ability to fulfill our statutory mandate to dispose justly of a high volume of cases.  *Id.* (citing Iowa Ct. R. 21.30(1)).

calculations. They first maintain DD1 and DD48 were separate entities. But our supreme court addressed this issue in *Hicks v. Franklin County Auditor*, 514 N.W.2d 431, 434 (Iowa 1994), when the court concluded DD1 was renumbered to DD48. To the extent the supreme court's resolution of this issue is not dispositive, we have reviewed the factual record here and conclude substantial evidence supports the district court's conclusion that the entity was renumbered. The plaintiffs next claim DD48 abandoned the drainage ditch in the 1930s because portions of the drainage ditch had been filled in and farmed. Again, the supreme court addressed this argument in *Hicks*, "reject[ing] the plaintiffs' argument that the waterway could not be restored because it no longer existed after the 1930s." *Id.* at 439. And to the extent any factual review is implicated on the easement or abandonment questions, we discern no error in the district court's conclusion that it was not presented with sufficient evidence to find DD1 was legally abandoned or dissolved in 1916 or at any later time. *See* Iowa R. App. P. 6.904(3)(a).

The plaintiffs also assert DD48 could not have an easement for a ditch right of way because there was no statutory provision for such easements at the time. They claim a drainage district could not have an easement until 1985 when the General Assembly enacted Iowa Code section 455.33, which is now section 468.27(2). *See* 1985 Iowa Acts ch. 163, § 1. But this argument fails to reckon with our case law recognizing a drainage district could have an easement in the drainage area before that legislation was enacted. In discussing what was then Iowa Code section 1989-a21 (Supp. 1913), our supreme court explained:

> It will be observed that the taking is for a public purpose, and that an easement is created upon the land included in the right of way for the purpose, in this case, of establishing a new channel for

the river, and to take care of the excavated material, subsequent erosion of the stream, and other matters necessary to the maintenance of the new channel for the stream.

*Barton v. Boie*, 151 N.W. 1064, 1065 (Iowa 1915). Although section 1989-a21 did not expressly specify that a drainage district obtained an easement for a drainage ditch, that is how the court interpreted the statute. *Id.*; *accord Johnson v. Drainage Dist. No. 80 of Palo Alto Cnty*, 168 N.W. 886, 888 (Iowa 1918) (noting "land taken for a ditch right of way is simply burdened with an easement" but "the owner retains the right to use the property in any way not inconsistent with the carrying out of the plans of the drainage district"). This precedent controls our resolution of the issue, and we conclude the district court did not err by finding DD48 had an easement for the ditch right of way.

## B. Damages

Both parties seek to relitigate damages in this appeal and cross-appeal. We tackle each claim separately, though there is some overlap.

### 1. Plaintiffs' appeal

In their appeal, the plaintiffs assert the district court erred in calculating damages by (1) reducing the award based on finding an easement; and (2) calculating the damage caused by severance at less than 10%. Given our resolution of the easement issue, we are only left with the second assertion.

The crux of the plaintiffs' claim is that their expert testified severance of land typically reduces the fair market value by at least 10%, this testimony was essentially unrebutted, and therefore the district court erred in finding reductions in the amount of 4.5% (Abbas), 1.98% (Reid-Meyer), and 9.4% (Hanson). The plaintiffs similarly complain that the court should have accepted their expert's

testimony on the specific reductions for the property based on comparable sales: 9.1% (Abbas), 9.1% (Reid-Meyer), and 9.7% (Hanson).

Rather than accept the plaintiffs' expert's calculations, the district court credited testimony from the chapter 468 appraisers, who partially grounded their analysis in the land's corn suitability rating (CSR2). And the court expressly found the chapter 468 "appraiser's use of the CSR2 rating to be more credible than [plaintiffs' expert's] market approach." On the other side of the coin, the court did not find credible certain opinion evidence from the chapter 468 appraisers, including how changes in the drainage ditch over time did not substantially change the farming practices on the land.

Given the district court's privileged position to review the evidence and its duty to resolve conflicts therein, we decline to disturb these credibility findings on appeal. In declining to second-guess those findings, we emphasize two reasons: the case involved a battle of the experts and the issue concerns the amount rather than existence of damages. We are mindful of the supreme court's holding in another context that, "[w]hen a case evolves into a battle of experts, we, as the reviewing court, readily defer to the district court's judgment as it is in a better position to weigh the credibility of the witnesses." *State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000). And our general reluctance to disturb credibility findings is heightened in our review of damages, where we require only a reasonable basis for calculation:

> There is a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If the evidence is speculative and uncertain whether damages have been sustained, damages are denied. However, if the uncertainty merely lies in the amount of damages sustained, recovery may be had if

there is proof of a reasonable basis from which the amount can be inferred or approximated. Thus, some speculation on the amount of damages sustained is acceptable; however, overly speculative damages cannot be recovered.

*Pavone v. Kirke*, 801 N.W.2d 477, 495 (Iowa 2011) (internal citations and quotation marks omitted). With these principles in mind, we conclude the court's award of damages fell within the permissible range of evidence and was not overly speculative.

## 2. Defendants' cross-appeal

In their cross-appeal, the defendants contend in part that the plaintiffs received "excessive" damages. Specifically, they challenge the additional award for severance received by the Abbas family and Reid-Meyer, urging the plaintiffs are only owed damages for additional land taken in 2017 by expanding the ditch— not for any damages caused by the ditch itself, as those arguably date back to an early-1900s payment for damages.

As with the plaintiffs' appeal, we find the challenged damages fell within the permissible range of evidence and were not overly speculative. *See id.* We also conclude the district court's factual findings established the plaintiffs were owed damages beyond any compensation previously received for the easement. Because these findings were supported by substantial evidence, we affirm the damages award on cross-appeal.

## C. The transfer of land

Last, the plaintiffs argue the district court erred in ordering Reid-Meyer to convey the 4.01 inaccessible acres to DD48 without the court following the condemnation proceedings set forth in section 468.126(6). The defendants

respond claiming the court exercised eminent-domain authority under article I, section 18 of the Iowa Constitution and chapter 6B of the Iowa Code.

Unfortunately, the district court ruling did not specify what authority it relied on to order that the land "shall be deeded by a warranty deed to the [drainage district] free and clear of all liens and encumbrances subject to the drainage district paying the required compensation for this land." Nor did the defendants' rule 1.904(2) motion requesting this relief cite a legal basis for it. To compound the confusion, neither party filed a motion under rule 1.904(2) or any other pleading asking the court to clarify its order directing the conveyance. In other words, we cannot tell what law the district court believed it was employing.

Rather than take an unsupported guess as to the district court's intent, we conclude additional proceedings are required. We vacate the conveyance as currently ordered, finding it lacks a legal basis or is otherwise void. We remand this case to the district court for the parties to file statements setting forth their position on whether the land should be conveyed—and if so, how. If the district court intends to convey the land, it must identify the authority it has to do so, follow the appropriate procedures based on that authority, and proceed accordingly. *See Peterson v. Bd. of Tr.'s of Drainage Dist. No. 5*, 625 N.W.2d 707, 709–10 (Iowa 2001) (en banc) (discussing various methods of drainage-district takings). We offer no opinion on the propriety of any potential bases for conveyance identified on appeal.

**IV.    Disposition**

We affirm the easement and damages portions of the appeal but vacate the conveyance of property and remand with directions explained in Division III.C. We affirm the cross-appeal.

**APPEAL AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS; CROSS-APPEAL AFFIRMED.**